Rivera *v.* Cámara.

Appeal from the District Court of San Juan, Section 2.

No. 661.—Decided May 3, 1911.

Appealable Orders—Judicial Administration.—A decision of the court below overruling a motion to cancel the appointment of a judicial administrator made in accordance with the act relating to special legal proceedings is appealable.

Judicial Administration—Defective Oath—Legal Representative of Minor.— The oath made to an application for the appointment of a judicial administrator by a person not interested in the inheritance nor acting as the legal representative of the infant petitioner, which character appertains only to his father, or, in default of the latter, to his guardian or defensor, and in which, moreover, it is not stated to what facts affiant swears upon information and belief and what, from his own knowledge, is defective and produces no effect whatsoever.

Id.—Defective Oath Amended—Powers of Court.—An application for the appointment of a judicial administrator must be sworn properly and, should the oath be defective, the court may permit its amendment before but not after the appointment is made.

Id.—Natural Children—Action for Acknowledgment—Legal Capacity.— Natural children cannot seek to obtain a declaration of their filiation in a proceeding for the appointment of a judicial administrator, nor can they request such an appointment until they have been acknowledged by an authentic and public document or their right has been established by virtue of a judgment.

Id.—Natural Children—Proof of Filiation—Certificate of Baptism.—A certificate of baptism stating that the child christened is an acknowledged natural child of another person, without declaring that said person made the acknowledgment before the priest who authorized the entry, nor certifying that such acknowledgment took place before witnesses who testify to the truth thereof, such document is not sufficient evidence to establish the filiation of the party concerned as a natural child.

Id.—Affidavits—Oath Taken by Client Before His Attorney.—The practice of swearing to affidavits before counsel for the affiant acting as notary is a

bad practice and should not be persisted in; courts should look into affidavits thus sworn, but not being ineffective their admission is not an error sufficient to justify the reversal of the decision appealed from.

The facts are stated in the opinion.

*Mr. José Martínez Dávila* for appellant.

*Mr. O. M. Wood* for respondent.

MR. JUSTICE ALDREY delivered the opinion of the court.

On October 26, 1910, Ignacio Rivera, a minor, represented by his best friend, Isabel González, filed in the District Court of San Juan, Section 2, a petition wherein he stated that he is the acknowledged illegitimate child of his mother, Isabel Rivera Rodríguez, who died intestate in the town of Bayamón on August 6, 1903; that up to the date of filing the petition the court had not yet appointed a judicial administrator to take charge of the personal and real property left by the decedent and giving a description thereof; that having an interest in said estate and fearing the disappearance thereof he prayed the court to designate a day and hour for the hearing of this matter and to appoint a judicial administrator, and to that end he gave the names of the other heirs, to wit, Ramón Cámara, the widower, two legitimate sons, and another acknowledged illegitimate son.

The lawyer's signature is the only one appearing on said petition, but on November 1, 1910, the following affidavit was made:

"*San Juan, Porto Rico, Island of Porto Rico, ss.*

"I, Ignacio Rivera, through my representative, Isabel González, 33 years of age, single, a resident of Bayamón, state under oath that I have read the foregoing complaint and that the facts therein stated are true to the best of my knowledge, certain hearsay statements excepted, which, however, I believe to be true.

"(Signed).                    ISABEL GONZÁLEZ.

"Sworn to and subscribed by Isabel González before me this 1st day of November, A. D. 1910.

"(Signed)          F. G. PÉREZ ALMIROTY,

"*Deputy Clerk.*"

On that same day, November 1, Ramón Cámara in his

own right and on behalf of his minor children, Agustín and Julia Cámara, filed a motion stating that the above-mentioned petition filed by Ignacio Rivera does not conform to the law, the affidavit at the foot thereof being null and void; that Ignacio Rivera is not the acknowledged illegitimate child of Isabel Rivera Rodríguez, and that therefore he is not entitled to apply for the appointment of a judicial administrator; that Isabel Rivera at her death did not leave any property, and that the share contributed by her husband to the conjugal partnership was greatly reduced by the expenses of her long illness, for which reasons he prayed the court to set aside the order appointing the judicial administrator therein.

This motion was sworn to by Ramón Cámara before a notary public, notice thereof having been served on Ignacio Rivera's attorney on the same day.

The documents before us do not show whether or not the other illegitimate child appeared and how the summons was served on him; the only legal steps we find to have been subsequently taken are the introduction in court on November 7 by Ramón Cámara and Ignacio Rivera of documentary evidence, that of the former consisting of the certificate of birth of Ignacio González issued by the civil registry of Bayamón, reciting that on August 14, 1890, Antonio González registered the birth of the child Ignacio, who was born on August 1 and whom González acknowledges in the certificate as his own natural son without the mother appearing therein to acknowledge it; the certificate of the marriage of Ramón Cámara to Isabel Rodríguez, which took place in Bayamón on June 28, 1902; the certificate of death of Isabel Rivera, who died on August 6, 1903. He also introduced other documents referring to certain acquisitions and real estate negotiations which are not necessary to relate for our decision.

Ignacio Rivera, in turn, introduced a certificate of baptism reciting that on August 17, 1890, the parochial priest of Bayamón christened a child born on August 1, a natural

son of Isabel Rivera, naming him Ignacio; but this certificate fails to state that Isabel Rivera acknowledged before him such child as her natural son; a certificate of the death of Isabel Rivera identical with that introduced by the other party, and a number of testimonies in affidavit form sworn to before a notary, who also acts as counsel for Ignacio Rivera, certifying as to who is the mother of Ignacio Rivera, and to several acts of acknowledgment.

After admitting this evidence the court rendered the following decision:

"In this case a judicial administrator has been appointed to look after the interests of the minor, Ignacio Rivera; such appointment has been objected to.

"It is true that the oath to the petition is defective because it should have been made by the petitioner himself or by his representative, Isabel González; this defect may now be corrected.

"It is not possible nor permissible to render a final decision upon the interpretation and weight of the documentary evidence introduced to oppose the appointment of an administrator; the court now will state only that petitioner, Ignacio Rivera, may possibly have the legal capacity and the rights he claims, and therefore he should be represented by a judicial administrator.

"The motion to set aside the appointment of the judicial administrator is overruled with costs.

"San Juan, P. R., November 21, 1910."

A few days later Ramón Cámara filed the following notice of appeal:

"*To the Secretary of the Court:*

"Ramón Cámara, adverse party herein, by his attorney, José Martínez Dávila, hereby informs you that he appeals to the Supreme Court of Porto Rico from the decision rendered herein by the court overruling the motion objecting to the appointment of the judicial administrator.

"San Juan, P. R., November 25, 1910.

         "(Signed)      José Martínez Dávila,
         "*Attorney for Ramón Cámara, adverse party.*

"Notified with copy of the foregoing notice of appeal this 25th day of November, 1910.

"(Signed)      O. M. WOOD,<br>
"*Attorney for Ignacio Rivera.*"

The decision states that the motion filed by Cámara seeks to set aside the appointment of the judicial administrator, while the notice of appeal calls it a motion objecting to such appointment. There is no doubt that both documents referred to the same motion; and whether or not there has been more than one motion, only one decision was rendered, which is transcribed above and from which this appeal has been taken. Such decision is appealable because it has adjudicated definitely the question of whether or not the judicial administrator may be appointed at the instance of Ignacio Rivera over the objection made by Cámara to such appointment.

The first error assigned by appellant is that the district court allowed the petitioner to amend his affidavit, which was acknowledged to be defective, because once the case is submitted to and decided by the court such an important defect could not be cured.

As appears from the record, the judge appointed the judicial administrator before the affidavit to the petition was amended, which affidavit he declared to be, and it undoubtedly was, defective, because it failed to state, not only which facts affiant knew from information and which of his own knowledge, but also because it was subscribed by Isabel González, who has no interest in the inheritance and is not the legal representative of the minor petitioner, since the only person legally entitled to represent him is his father, Antonio González, whose death has not been alleged, or a tutor or defensor appointed by the district court in case of the death of the father or that his interests are in conflict with those of his son.

Moreover, the provisions of section 23 of the act relating to special legal proceedings, approved March 8, 1905, in or-

der to appoint a judicial administrator require that the petition containing the requirements of said law be duly sworn; and in this case the appointment was made before the petition was properly sworn to, thus violating the law.

The court had power to allow the amendment to the oath before, but not after making the appointment of the judicial administrator, because in the latter case it would be executing an act which could not be done legally without said oath, and so it might happen that the properties of Ramón Cámara could be placed out of his control and under a judicial administrator without the oath required by law.

The application of Ignacio Rivera should have complied with all the requirements of the law so that that alone would authorize the judge to call a meeting of the heirs for the purpose of appointing the judicial administrator.

It is further alleged that the court below committed error because the filiation of children is proved by the certificate of birth issued by the civil registry and not by the certificate of baptism, and the testimony of several witnesses who stated that the petitioner is the natural son of Isabel Rivera.

The hearing held on November 7 for the introduction of evidence was neither required nor ordained by law; but from the evidence therein admitted it appears that Ignacio Rivera was acknowledged by his father only, the name of the mother not appearing in the certificate of birth issued from the civil registry. It is true that he introduced as evidence a baptismal certificate stating that Ignacio Rivera is the natural son of Isabel Rivera, but under the repeated jurisprudence of the Supreme Court of Spain and of this Supreme Court a baptismal certificate stating that the person christened is an acknowledged natural child of some other person, without reciting that such person made the acknowledgment before the priest who made the entry, nor certifying that such acknowledgment took place in the presence of witnesses who testified to the truth thereof, is not a sufficient document to establish the acknowledgment of the party concerned as a

natural son. (See *Josefa Aguayo et al.* v. *Elvira García*, 11 P. R., 263, decided June 30, 1906.)

The only thing which might lead to the belief that the petitioner, Ignacio Rivera, is the natural child of Isabel Rivera y Rodríguez, whose succession is herein involved, is the testimony of witnesses introduced by petitioner tending to show that he is her acknowledged natural child. However, we think that such kind of evidence might be pertinent in an action brought against the heirs of Isabel Rivera to obtain the declaration that plaintiff is her acknowledged natural child; but in special proceedings, like the one at bar, such evidence should not be admitted because those proceedings are not to obtain a declaration of rights, but simply to secure, on the strength of a clear and recognized right, the judicial administration of the properties of the person entitled to the inheritance. It may be that Ignacio Rivera is the acknowledged natural child of Isabel Rivera, but until he is acknowledged by her in an authentic and public document, or until that status has been declared by a judgment, he cannot request that the properties of the person, whose son he believes himself to be, be subject to a judicial administration. This doctrine, already established by this court in the case of *Justo Puente Armsterdam et al.* v. *Félix Puente Solano et al.,* 16 P. R., 556, decided June 18, 1910, which involves a declaration of heirs, has a fitting application to the present case.

In the opinion of the court in that case it was stated:

"In order for the appellant in this case to have successfully alleged her condition of an acknowledged natural daughter, and make opposition as such, and as such be declared an heir, it was necessary that her acknowledgment should be clearly shown to have been made by the father in a voluntary and formal manner, or that if she had the right to be acknowledged under the law, and the father failed to make the formal acknowledgment or declined to do so, that she had obtained a final judgment in her favor from a court of competent jurisdiction and under the proper 'contentious' proceeding.

" 'The condition of a natural child must necessarily be based on the acknowledgment by the father, voluntarily and legally established, or in the event of failure or refusal, in a formal final judgment to that effect.' (Decision of the Supreme Court of Spain of April 16, 1864.)

" 'The filiation of natural children must necessarily be shown by the acknowledgment of their parents or by the formal declaration of a final decision, a mere certificate of baptism not being sufficient to establish it.' (Decision of the Supreme Court of Spain of June 28, 1864.)

"Article 131 of the Spanish Civil Code, which was extended to Porto Rico in 1889, provides that the acknowledgment of a natural child shall be made in the record of birth, by will, or by any other public instrument. When the acknowledgment has been made by the father in one of the forms prescribed, then it is not necessary to have recourse to the courts, because his status is perfectly established.

"Article 135 of the Spanish Civil Code determines when the father is obliged to acknowledge a natural child, namely, when an indisputable document written by him, expressly acknowledging his paternity, is in existence, or when the child is in uninterrupted enjoyment of the status of a natural child of the defendant father, justified by direct acts of the said father or of his family. (With respect to the mother, see article 136.) And in such cases when the father does not agree to make the acknowledgment in the manner prescribed in article 131, it is necessary to have recourse to the court of competent jurisdiction and exercise an action to secure the acknowledgment, the time within which such an action must be brought being fixed by article 137 of the said Spanish Civil Code.

"Our Revised Civil Code, in section 187, provides that an illegitimate child may be recognized in any way by the father and the mother conjointly, or by either of them, and section 188 provides that illegitimate children may prove their paternal and maternal descent, section 198 providing that the filiation of children is proved by the certificate of the birth issued by the civil registry, by the possession of the status of filiation, or by any other legal means.

"Section 189 of said code mentions the three cases in which a father is obliged to recognize an illegitimate child, namely: (1) Where there is an authentic statement in writing made by him expressly recognizing its paternity; (2) when publicly or privately he has shown that it is his child, or has called it as such in conversation, or looks after its education and maintenance; (3) when the mother

was known to have lived in concubinage with the father during the pregnancy or birth of the child, or when the child was born while its parents were engaged to be married. If we consider this section in relation with other provisions of law which the code contains on the subject, especially with section 199, we will reach the conclusion that in all three of these cases, when the father fails or declines to make a formal acknowledgment, it is necessary to bring an action in a court of competent jurisdiction within the time which the law provides to establish the filiation.

"The procedure prescribed in the act relating to special legal proceedings, to which we have made reference, is not the proper proceeding in which to obtain a judgment holding a person to be the acknowledged natural child of another. It has been the constant practice that when a father fails or declines to make the acknowledgment, that the son must have recourse to a court of competent jurisdiction and exercise an action for filiation, to secure a judgment of the court declaring what the father failed or declined to declare. This proceeding, from its nature, is 'contentious,' and the parties thereto, in addition to the son, are the father or his heirs and successors in interest.

"Only when a natural child had been voluntarily and formally acknowledged by the father, or has obtained a judgment recognizing him as such, can recourse be had to the act relating to special legal proceedings to obtain the declaration of his heirs in cases of intestate inheritance. The proceedings prescribed by said act are brief, the terms short, and the purpose of the same is to declare who are all the heirs of a particular person who has died intestate, when the personality of such heirs is established in an incontrovertible manner; and although it is possible that opposing claims be made, such claims generally refer to the better right of the claimants or merely to questions of law."

The third error assigned by appellant as committed by the court below is the admission of certain affidavits prepared in the office of the attorney for petitioner and sworn to before him as a notary public. It is true that this court has already held this to be bad practice and should not be persisted in; but in the absence of a statute prohibiting it, we cannot hold that affidavits sworn to before one's own attorney, acting as a notary, are on that account inefficient.

The court ought to have rejected them, but its failure to do so is not an error requiring the reversal of the decision rendered in this case.

The objection would have been stronger if it had been made on the ground that the testimony of the witnesses was presented in affidavit form—that is to say, without giving the adverse party an opportunity to cross-examine them.

We observe that the petitioner, although the son of Antonio González, bears the surname of Rivera instead of González, and also that the person whose succession is involved is sometimes named Isabel Rodríguez and at other times Isabel Rivera Rodríguez, but the parties have raised no objection to this fact nor deny that the persons are identical.

For the foregoing reasons the court committed error in denying the motion of Ramón Cámara and his children opposing the appointment of a judicial administrator in this case, wherefore its decision of November 21, 1910, should be reversed, and in lieu thereof a decision should be rendered by this Supreme Court denying the application made by Ignacio Rivera for the appointment of a judicial administrator of the properties of Isabel Rivera, with costs in the court below.

*Reversed.*

Chief Justice Hernández and Justices MacLeary, Wolf, and del Toro concurred.